Thank you. Simon Gertler on behalf of the Posta Band of Villageno Mission Indians and with me in the room now holding my laptop is my co-counsel Michelle Lapina. I intend to reserve four minutes of my time for rebuttal. The tribe has suffered irreparable harm to its cultural resources and religious practices from the unlawful construction of a 30-foot tall border wall and related infrastructure through its traditional territory. Let me ask you some questions. I know we asked you or sent out a notice that we might be inquiring about irreparable harm. It seems to me there were a number of factual disputes in the record before the district court as to the harm suffered by the La Posta tribe and I guess my question for you is why was the district court required because that's how you are was required to conclude that that La Posta had made a sufficient showing of irreparable harm? Your Honor, because the record the evidence in the record it satisfies the likelihood of irreparable harm standard and there's one important point that I want to start with that the government didn't rebut the tribe's evidence on one really important point and I'll explain that here. The tribe's declarations through traditional knowledge and archaeological evidence attests to the likelihood of burial sites within the project area and the district court suggested that many questions exist as to the likelihood of that assertion but the government relied on findings from the, I'm sorry, the district court relied on findings from the government surveys from its field surveys and I looked back through the record preparing for today's hearing and the government doesn't allege either implicitly or explicitly anywhere in its declarations that it didn't find burial sites in its surveys. In other words, the government offered no evidence whatsoever to rebut the tribe's evidence of burial sites in the project area so the district court made an inference that was not based on facts in the maybe I misunderstood the record but I thought there were two specific findings that you urged the court to make regarding potential human remains. One where the government says no there was just a piece of PVC pipe and the other one was apparently south of the border in Mexico and DHS obviously couldn't go to investigate that. Was there additional evidence that I didn't see of burial? Yes, your honor, those two those two findings were discoveries made during construction but the tribe's declarants, the tribal chairwoman, a councilwoman, and the tribe's in-house archaeologists and outside archaeologists all offered evidence based on their own traditional knowledge of the oral history of the evidence from other archaeological sites in the area that there is a high likelihood of burials in the project area. Well high likelihood but the question is have they actually discovered any? Isn't that the issue? Otherwise we're hypothesizing here. But the test here, the standard, is a likelihood of irreparable injury and I think the archaeological evidence demonstrates there's a high likelihood of burial sites throughout the project area and the construction will inevitably destroy some of those sites and I'll get to this later, I don't think the government's mitigation measures adequately address address that harm. But the district court found that was a contested issue of fact that it would need to hold an evidentiary hearing on, isn't that correct? Right and that's where I think the district court erred because the district court again pointed to the government survey results and the quote the quote that it cited in the record was Paul Enriquez from Border Patrol when he said Border Patrol surveys and record searches do not indicate the presence of any known burial sites or historic villages. Now the first time I read that I didn't catch that but the key word there is known. He says did not indicate the presence of any known burial sites and he says that again on the following page of the record that I'm looking at 152 paragraph 50 and but we're still but we're still speculating are we not that that's I think that was a concern that Judge Battaglia had. I mean you can say there's a possibility because there are no known sites that have been found but is I guess the question I'm asking you is is that enough to overturn the district court's concern that you just didn't have enough evidence that there actually were ancestral village sites or burial sites inside the construction zone? It may have been enough if the district court said the tribes evidence on its on its own is insufficient but I think what the district court really looks to here was that there was counterpoints on the government side and the point that I'm trying to make is actually there weren't counterpoints on the government side. I think if the government surveyed the area and if from its surveys it didn't find any evidence of burial sites whatsoever it would have said that in its declaration but it said something different. It said there were no known burial sites and we wouldn't we knew that already based on the records review that our own archaeologists did and that's in the record that there were no prior surveys here so there wouldn't have been any known or recorded burial sites found through a record search. The survey done in 2000 a resurvey done in 2020? Yes so the research so the resurvey was done after the records review right the point of the records review was to find the existing cultural resource surveys and their results. The new survey was to survey unsurveyed areas and find unknown archaeological research previously unknown archaeological resources. So the what they don't say and I think what's significant here is what they don't say they didn't say they didn't find any evidence of burials they said we didn't find any evidence of known burials and that's maybe that maybe this is a tautological argument but how do you prove the negative if they haven't found anything to date then why should we assume that they will find something in the future? Well your honor I'm not asking the government to prove the negative here they did a they did a field survey of the area and they concluded they didn't find evidence of known burials they could have said and this is not proving a negative they could have said we did a survey and we didn't find any evidence of burial sites so we think the tribes wrong here. What I'm suggesting is that they did find evidence of burial sites and they didn't put that in the record. How can you square that with their statement that there are no known sites that that's why I'm saying it's sort of a tautological problem here and you really are asking the government to prove the negative when you can't prove the positive. Okay let me let me move to the next my next point here because I do think there's some significance in the word known here but the government does acknowledge that it found other isolated archaeological resources and so so the government essentially concedes yes there are some cultural resources from the project area maybe it doesn't acknowledge there are burials but those what were these resources that would not have been sufficient to meet the requirement for registry on historical places? That's what the government suggests but I don't think that's the threshold for irreparable harm that's a standard under NHPA but we're talking about irreparable harm here and the tribe stated in its declarations that all of the cultural resources in the project area are important to the tribe and harm to them will be irreparable and I'd like to compare this to the standard that this this court has made in other cases like the Alliance for Wild Rockies case which was the same posture as this case here the Court of Appeals reversed the district court on the irreparable harm issue reversed the denial of an injunction on the irreparable harm issue when it said that a logging project was going to harm the the plaintiffs members ability to view experience and utilize the National Forest it cited their interest in hunting fishing hiking horseback riding cross-country skiing here the tribes asserted an interest in its cultural resources the government has conceded there are resources in the project area and I think that's enough under this court's precedent to demonstrate irreparable harm and an abuse but don't you think there's a big difference between action activities that are occurring in the National Forest and activities that are occurring along the international border which we know from our own docket produces many many cases of illegal alien and scenario for if we're balancing equities is it not well this court didn't say in say so in the Sierra Club cases it heard the government's arguments on that point and still held in favor of the Sierra Club that it was experiencing irreparable harm in that case to its recreational and aesthetic interests in these international border area and to your honor's point about contraband coming across the border the Sierra Club in the Sierra Club to case this court also recognized that the government didn't actually have evidence of contraband in the project area that the contraband was apprehended at ports of entry and the evidence in the Sierra Club counsel if you're gonna try and convince us that there's no contraband being smuggled across these open areas of the border you're wasting valuable time here I've had innumerable cases that did not have anything to do with designated border crossings as have my colleagues so I I just I don't understand your point here right I mean it's not go ahead I'm sorry I'm sorry I'm sorry I didn't mean to I thought you were we're done I guess can you point me I guess to the best evidence that you supplied or the post a supply that would support a finding of irreparable harm similar to that in Sierra Club what are you drawing on in terms of the evidence or your allegations in the complaint that would make this more comparable to Sierra Club in terms of the harm there are a number of places in the record outside to one and then I'd like to save my time for rebuttal but this is a statement from the tribe's chairwoman chairwoman Parada and she says the project area along the board along the proposed border wall structures this significant Kumeyaay spiritual and cultural sites reflecting our deep and abiding tie to the area the sensitivity of the project site sorry this is at page 286 of the record and then she notes that these sites will be impacted further by additional construction without protection or care I'd like to save the remaining time let me ask just one question now I don't know if that responds to Judge McGee's question but you know I'm gonna pass that by answer this question can you one point to me a specific finding that the district judge made on the irreparable harm issue that you're attacking say wherever the evidentiary support or whatever it is that that one that that finding was erroneous first of all tell me what finding it is well the only if you understand my question I think I do your honor that the only finding the district court made on irreparable harm was the about the presence of burial sites in the project area and it said that was unlikely considering the survey results as I explained the beginning of my argument I think that was an error but additionally the district court didn't consider many of the other claims of irreparable harm that the tribe has made here the sort of broader environmental harm claims that this court recognized in Sierra Club and another important one there I think is the trails that the tribe talks about these sacred trail systems and the only response the government made there was that 14 miles of the project our existing wall and won't cut off those trails well we've got four additional miles that will and that's what the tribes concerned about but I'd like to say but we're talking to we're talking 14 out of 21 miles are we not that's already either walled or has vehicular barriers that are being replaced yes your honor that's right and this court recognized in the of when the government made the same argument in Sierra Club that that where there's harm to some part of the in some part of the project area it's irrelevant whether there is harm in another in another part you know the focus is on the irreparability of the harm not the severity or the magnitude but I think the finding if I understand judge Tashima's question is found at the bottom of page 35 and the top of page 36 of the district court's order where he specifically references that the likelihood of injury is first mitigated by the efforts of the defendants with regard to these protocols consultation cultural monitors and then he recites the fact that it should be noted that much of the activity will occur on federal land which has already been disturbed with barrier wall construction isn't that a finding by the district court yes and I have responses to both of those findings why they're erroneous and ideological and abuse of discretion but I see my time expired go ahead go ahead okay so with regard to I think the first thing you mentioned is mitigation and with regard to mitigation the district court cited the Border Patrol's cultural resources plan which it noted was in draft form and being finalized and we're six months into project construction now and certainly over 50% complete us in a draft protocol is not very comforting to the tribe at this point but even if even if it were final the goal of the plan is repatriation of cultural resources after they're disinterred after they're taken out of the ground by construction and the injury occurs at the time they're taken out of the ground so the fact that they're repatriated is something that the tribe would like to happen after the injury but it doesn't change the irreparable harm there in with regard to your other point about the the area of being previously disturbed again it's disturbed in certain areas like where there's existing fence but that doesn't that doesn't change the fact that there are still burials in other areas or even in areas that are already disturbed and the project here is excavating a very large trench and it would go deep by foot wide trench for this 30 foot high wall which is a disturbance that has that this area hasn't seen before and that's really the disturbance that the tribes concerned about let me can I ask you a question on a different slightly different subject because I'm curious in the post as view are the ultra virus and closed by the by the language of the Supreme Court's first day order in Sierra Club would that mean that the APA claim is also foreclosed can you comment on that please yes I don't think so your honor because the Sierra Club case didn't raise the APA claim the APA claim was in the California vs. Trump case which didn't receive a stay from the Supreme Court so I think anything the state doesn't affect the tribes APA claim which is controlled by this court's precedent in Sierra Club to California I'm sorry in California vs. Trump all right thank you I'll give you time you're our only case this afternoon so I feel a little liberal giving you the amount of time you need to give you that opportunity to rebut so miss Murphy may it please the court it's an mercy for the government your honor's the district court did not abuse at this discretion here it concluded that la pasta had failed to carry its burden on any of the elements necessary to support a favorable exercise of discretion from the district court it concluded correctly that la pasta failed to show a likelihood of success on the merits and it properly considered all of the relevant factors there it correctly concluded that la pasta had failed to show a likelihood of irreparable harm particularly given let's talk about irreparable harm here if we can't start with that and my question why is it the sort of recreational and aesthetic harm that we are that that was established sufficiently I guess to determine heart to be irreparable harm in Sierra Club sufficient here I'm partly because it hasn't been alleged from the beginning of the case this is a fairly new development and in fact if you if you look at the complaint at pages 17 to 18 at la pasta's complaint it's very clear that the actual focus of the case and they mentioned this also in the hearing is that is the burials this is also the first time I have ever heard la pasta argued that the injury occurs when the burial is actually unearthed again if you look at the complaints and if you look at what happened in the district court their argument has always been that remedial measures are sufficient provided that appropriate cultural measures are taken and I would just like to point out to this court that there is no evidence anywhere in the record of this case of the government ever doing anything culturally and insensitive to a known cultural resource even the ones where there's some question about whether the thing is in fact like a cultural resource or just a piece of PVC piping the government has always allowed tribal members to address that in their own way and do what's respectful the government as you know from has and has tried to involve the tribe from the outset and so one of the reasons that the court about mr. Gertler's I think argument that the government survey wasn't very thorough or it seems like he was talking about the survey by the government and it does appear that the government survey wasn't very thorough and the government did find some archaeological resources but didn't explain what those were what do we are the I just like to point out this is a preliminary injunction so all the district court has is literally I mean that the government hasn't even answered all there is is the complaint and the attachment so to some extent the court just had to work with what it had the government's had an a presence in this since 1907 and there are numerous surveys and archaeological surveys the government made all of its arc the government has an archaeological contractor on-site to make sure that no problem horses it made all of the archaeological contractors materials available to the tribe and when the tribe wanted to suggested that they were additional areas of sensitivity then the government resurveyed those areas with tribal cultural monitors present so to the extent that an area hasn't been closely surveyed the government has certainly been listening to the tribe in terms of what other surveys are needed the other thing the honor is that there are surveys and what what mr. Gertler said was that we hadn't and this is true that there are no known burials so I I'm not quite sure how we are supposed to identify unknown burials the truth is that the government has looked for them the government has surveyed for them the government has enrolled the tribe to help with these resurfaces and none has been found so that and that it's it's not even a contested fact issue because the tribe acknowledges that there's no burial has been found in the area similarly for the villages you honor their known historical archaeological sites none of those two in the construction area the other the other thing that the evidence shows that significantly important here is that when things are found then the project was changed the design of the project was changed there were two archaeological sites found and a road was rerouted to avoid one of them and for another one of well was put in a different place so the evidence before the court overwhelmingly was that the government is making really extraordinary efforts to make sure that none of the harm that La Paz sir is worried about actually happens so so so that's and then I think that the court found that very important significantly honor this again the question of the of the bones that may not have been bone bones in each instant the key thing is not kind of the factual dispute about where it was or what happened but for purposes of making sure that harm is avoided the key thing is that in each case the tribal members who are present were allowed to go ahead and deal with the issue as appropriate to them even though on one occasion I think bald crossing the border and so again that's the government really making an extraordinary effort to make sure that none of these harms would come to fruition that the pasta have identified so as I mentioned you're under the allegation has never been that the harm involves actually disinterring it's always been treating them the whatever is found respectfully the other thing with respect to that you're on and the other part of the government's avoidance strategy strategy is that the protocol it's you know still currently being finalized but it's in place and the government has undertaken to abide by it and that protocol provides that if anything is found that's the culturally significant to the tribe work will be stopped the tribe will be contacted and it will be given time to deal appropriately with whatever is found there and there are tribal cultural monitors on site who can go wherever they want and observe whatever they want so I think what the district court found here was was given you know the nature of the harms that were alleged in that court and the government's evidence of really taking extraordinary steps to work with the tribe as much as possible and to avoid any possible harms that that that really foreclosed it's the judge's ability to granted preliminary injunction here can we talk a little bit about the likelihood of success on the merits it seems like the district court here recognized that the Sierra Club one injunction was based on the ultravirus cause of action and that state order wasn't wasn't necessarily relevant to the APA cause of action so even assuming we're persuaded that the cause of action I guess I'm just trying to figure out what authority permits the district court to interpret the state order as also foreclosing the APA cause of action all right that's kind of a complicated question you know if you don't mind I'm going to bite at it in two ways so please bring me back on track if I don't answer it appropriately first of all I don't think it's fair to say that it was just the Supreme Court stay order that made the district court conclude as it did on the likelihood of success on the merits and that that was not a ground for granting relief like it was also looking to orders that this court had issued the other thing is that the Sierra Club stay is a complicated animal because it first came to this court on a preliminary injunction where it was just Sierra Club's injunction but by the time it got to the Supreme Court it was a permanent injunction which although Sierra Club and the count there wasn't an injunction for California but California and the other states did file in the Supreme Court they filed an amicus brief so the arguments of the state was were at least present there even if you're not looking as the stay as kind of binding authority I don't think that the district courts suggested in any way that they would be binding authority it was just reading tea leaves so that from the government's perspective your honor as you know we filed a petition for certiorari in the Sierra Club case we gone you know this list of general has authorized the filing of a petition for certiorari in the 2808 cases also those petitions argue that there's no cause of action really a very you know a very similar reason under the APA and under the ultra virus cause of action so from the from the government's perspective they aren't the arguments are very much the same counsel are you relying on the language of the July 26 2019 Supreme Court order where the court said quote among the reasons is that the government has made a sufficient showing at this age that the plaintiffs have no cause of action to obtain review of the acting secretary's compliance with section 8005 and quote yes we are it's and that's certainly what the Supreme Court said as the district court said explained here when the Supreme Court does tell us what it's doing it's important to look at it I think I think my response was more to do with them the idea that the district court treated that as some kind of controlling precedent which I don't think is true because the courts just looking at the likelihood of success I mean frankly your honor at this point none of us the district court was right none of us knows you know whether that's claimed claim is going to be sustained or not the Supreme Court's now granted certiorari and so at a bare minimum all we can say is that we don't know what the answer to that is and LaPoste of course we do know from Maryland Chief Justice Roberts in chambers opinion the three factors that the court considers when it considers lifting a stay or entering one do we not we do and so and that certainly weighs in favor of the has to find that there's a likelihood of irreparable harm to the government of the stays denied so yes I mean you know there is every reason to suppose that the government will prevail on the Supreme Court but I don't want to overstep here and and like say more than I ought to and and all the district court the only showing that we need to make to sustain the district courts decision is that LaPoste has failed to show that it's likely to succeed on the claim and that seems to be manifestly correct yeah I was just struggling a little bit because what the Supreme Court had in front of it when it issued the language that Judge Talman just referred to was the preliminary injunction it regarding you know 8005 and whether the cause of action and I claim in that case and I just don't know if that's if that's just too broad of a reading that the district was giving it so I it's why I asked the question and tried to sort that sorry as I mentioned when the court got the case you know the cases were consolidated there was a permanent injunction California did a filing and as I say from the government's perspective APA no it's all there's no cause of action for anybody because these statutes simply don't contemplate these kinds of suits and so you know there's this under the zone of interest analysis APA or no APA it you know doesn't make too much difference your honor the other language that I noted and I'm trying to figure out what to do with is in Sierra Club 3 section 8005 is not an issue but there the majority basically rejects you know the government defendants arguments that's the pre-court stay of the injunction related to section 8005 necessarily determined that the harm to the federal government from the injunction prohibiting border barrier construction outweighs the plaintiff's interest and they and the majority in in that case specifically says we cannot read into the order more than its text supports and so would we be reading more into that order into the text supports is there a basis for us to disagree with the panel that's already looked at that and why is this context different I guess so I think part of the answer is in Maryland and King as Judge Cholman suggested in order to to grant the stay in the Sierra Club to place the Supreme Court had to conclude that there was a likelihood of irreparable harm to the government if the stay was denied so I take your honor's point about the what the majority said and in the 2808 Sierra Club 3 case but I also think you don't necessarily have to agree with what the district court did here and one of the things that you know that we see throughout this courts cases as this you know for example in the 2808 case what what the majority said about the decision in California it wasn't an abuse of discretion for the district court to deny the stay it's not that we would have done it the same but the standard of review is one that provided that the district court acts within the permissible scope of things that it can do then then that's that's up to the so so the Sierra Club to you know we have a battle majority that looked at now cause of action on the merits and very obviously disagrees with whatever preliminary finding our decision that the Supreme Court had on a cause of and all we have is the Supreme Court saying it was denied nothing else and I'm just trying to reconcile that you know with our adherence to Miller versus Gandy which says there has to be a clearly irreconcilable statement by a higher court so help me navigate how to how to how to reconcile yes so this gets right back to the question about about the fact that this is a preliminary injunction appeal so it's I understand that if there's like controlling precedent and a district court is applying the law to the facts and it says here's the Ninth Circuit decision I just have to follow that and the Supreme Court may even have taken the case and but it's still the Ninth Circuit decision I got to adjudicate this claim the way I do that's one thing like granting relief at the end of a case in an ordinary claim the preliminary injunction factors require the court to make a predictive judgment and in addition to this courts opinions your honor there are also the orders from this court looking to and we brought them to the district courts attention at the hearing looking to the Supreme Court stay order for example in the 2808 litigation the district court stayed its own injunction and there was an appeal to this court asking it to lift the stay and this court said no I'm not we're not going to lift this day and there was an injunction out of El Paso but it also looked to the Supreme Court stay order so when the district but I just but I thought I could just ask I thought that the reason that the on that 2808 part and that this Court of Appeals here didn't do that is because there are in large part that they didn't do that because there was a stay or there was an injunction already in place am I incorrect in that so that's absolutely true but that again in the 2808 your honor at the time at the time that this court the time that this court refused to lift the stay there was an injunction in place but this is where I want to look at the California part of the most recent 2808 opinion and where this court has you know over and again said California and particularly the published opinion in California and Sierra Club to where the court said when the district court when the district court did what it did and denied an injunction California was protected by the Sierra Club injunction it's not protected anymore and we're still going to say that it wasn't an abuse of discretion but the district court to deny injunctive relief. Mr. Pat, can I ask you a question before I forget? You just said the court is not protected anymore right? Did you say that? At the time that this court affirmed the denial of the injunction to California, California was no longer protected by the Sierra Club injunction because the Supreme Court had stayed in and at this point to you honor there's no there's no injunction currently in place and I think the district court also looked to that and said it would you know it said you know if it if I'm going to enter this injunction it's exactly the same more or less as the one that the Supreme Court stayed. Let me ask you a related question. You know we have, I'll call it, we have the merits decision now right from the 9th Circuit in the Sierra Club case. I guess it's Sierra Club but isn't three something like that. The section 2808 decision yes. Yes now now you know and that's subsequent to the Supreme Court stay order right? Correct. And it and then I think you know it took some pains to distinguish the stay order. Now at one point in argument earlier you said something like I don't know if you're referring to this specific point or not but you said something like there's every reason to believe that the government will prevail in this in the Does that apply to this Sierra Club 3? So your honor the government hasn't even filed its petition in that case so and it's a little bit different that case is a little bit different so I am not obviously the government's position is that it's going to prevail. I'm not going to stand here and make it it doesn't have the reason that I said that your honor was because when the Supreme Court granted the stay it gave us a hint because as Judge Tolman pointed out under the Maryland versus King standard the government had to show that there was a fair prospect of reversal and that there was a likelihood of irreparable harm to the government if the stay was denied. So we have more of an indication from the Supreme Court in the 2808 case the mandates not going to issue until the government files it until the date when the government has stated that it it will be filing its petition for certiorari so as it as of now there's no injunction in force in that case either but we're going to have to see how that case unfolds. And the government's intention is to petition for cert in Sierra Club 3? A petition has been authorized in Sierra Club 3 and we said as much to the court when we asked for the extension of the mandate. Okay Miss Murphy and I know I'm not trying to be difficult I'm just trying to help no please I sell but you said that we I guess our Miller versus Gammy are my concern with you know intervening authority that's clearly irreconcilable that this is different because this is a preliminary injunction I think that's what what can you give me your best authority for that? I suppose my best authority would be all the cases that say it's within the discretion of the district court that and the cases that hold that the plaintiff can make the on all of the elements and is still not entitled to an injunction and also the just the fact that just the plain legal fact that in the preliminary injunction context the district court is being asked to guess so as I say it's not as though it's being asked to apply something other than circuit law it's being asked to predict. No I know and I know that and that's I that's that's fair but we have a merits decision now from our own circuit. I understand that your honor but it's but there's there's also the Supreme Court stay afterwards and I think if you look at it from the district courts perspective it has to read the tea leaves and I understand your honors concerns about circuit precedent and district courts having to follow it of course they do but I think the court also had in front of it the examples of this court in border barrier litigation looking to that Supreme Court stay order in doing things like declining to lift the stay at the in the 2808 litigation before the merits decision so I think if the court sees this court doing it it's really hard to say that that's a legal error on the part of the district court because it may not be following the merits decision but it certainly is doing exactly what this court did in another case and we did bring that that ruling to the district courts attention at the hearing. So as I understand your argument you're saying because the district court has to make a predictive judgment about the significance of the stay orders that is a permissible factor in determining the likelihood that the tribe will ultimately succeed on the just to consider all of the relevant factors and it seems that relevant factors include since the actual and it didn't just look at the opinions in the Sierra Club case importantly it looked also at the actual injunction and the status of that injunction is state so you know as we said in our brief at a minimum that the court would could have done what Judge Gilliam did in the 2808 litigation it could have said well you know I understand circuit precedent I have to enter this injunction but I also am aware of what's going on the Supreme Court so I'm going to stay it that would have been completely legitimate too. I think it's an area where district courts really do have significant discretion as long as they don't you know commit legal error or you know. I have one more question it is is it your position or the government's that the the fiscal year 2020 funding transfers at issue here were substantively different from the fiscal year 2019 funding transfers that the Sierra Club panel held violated section 8005 I guess and specific is there any new evidence or change in circumstance or circumstances that would make the fiscal year 2020 transfers more clearly necessary in the national interest or more clearly as unforeseen military requirements than in fiscal year 2019. No your honor in fact it's notable so for fiscal year 2020 even after living through the events of fiscal year 2019 including litigation Congress gave the authority that it had given it in 2019 so that's fairly significant indication that that Congress did not want to you know I mean the statute the statutory language is identical and so it's a bit apart from that it's like there's I don't think there's any difference in the statutory authority the language of section 8005 is the same as I say we have Congress giving the Defense Department the same authority that it had in the previous year knowing at that point that DOD had used that had used that authority to fund counter narcotics activity. All right is there any other questions Judge Tashima, Judge Tolman for Ms. Murphy? No. Thank you. Mr. Gertler we went well over time with Ms. Murphy so I'll give you I think we've gone over time with you too but I'll give you about eight minutes if you need it. Thank you. So I'll address the likelihood of success issue first and then I want to address some of the points about irreparable harm but I think my opposing counsel is suggesting that the district court has some discretion in determining the law here and of course that's not the law that the district court is bound by the law of the circuit and the circuit reviews which records decisions on the law to no vote. The other cases that the government cites where the district court found likelihood of success on the merits and denied the injunction or stayed the injunction anyways right those were cases where where they did find that the funding scheme was illegal and that's not what happened here and I think we said in our briefs we're arguing about what the district court did not what it didn't do. So the district court didn't find on the merits and then stay an injunction it said there's no likelihood of success on the merits based on this cause of action issue which this court has resolved. But you do agree do you not that the district court has to make a predictive judgment as to what the ultimate likelihood of success will be on the merits and then balance that against the showing of irreparable harm in deciding whether or not to grant injunctive relief? Yes your honor I think that's right but there but the district court makes the analysis on each issue and then at the end decides given the the way each issue came out whether to issue the injunction or not the error that we're pointing out here the district court made was on the likelihood of success factor itself not necessary I mean we argue about the but the district court made a clear error in its conclusion on the likelihood of success issue I think whether to issue the injunction. Is your position strengthened or weakened by the fact that the court has now granted certiorari on both California and Sierra Club one and two? Your honor I don't think it makes a difference here I think the law is clear in this circuit that the only thing that changes a binding panel decision is a Supreme Court decision or or an en banc decision from the circuit. Well that's true that's true with regard to settled law but but again I'm back to my question about predictive judgments here the question is what is the likelihood of ultimate success on the merits and it it seems to me that that is a factor that the court can and should consider is it not in trying to to make that prediction I think it is your honor but I think the analysis it's about likelihood of six predicting likelihood of success under existing law under existing law not under law as it might change and at the time of the district court's decision Sierra Club two and California versus Trump had succeeded the Supreme Court stay order they came after the Supreme Court stay order and that's what bound district court. I'd like to move to the irreparable harm issue unless there any questions. Yeah can I ask you a question on that because I did ask Miss Murphy about that and in terms of why isn't this more like Sierra Club two or Alliance for the Wild Rockies in terms of the harm you know aesthetic you know the enjoyment of the land and she responded that it was never pled and do you think you pled it and if so can you show me where you pled that. Your honor I don't have the complaint in front of me but and Miss Murphy is correct when she said that the focus of the of the complaint were on legal issues like RFRA and section 201 and other things that required this burial site issue and that's what we focused on of course but there are other areas in the declaration and I've cited one of them I can cite a couple more where the where the five lays out this more this broader environmental harm. I cited the chairwoman's declaration I cited evidence about sacred trails I'd like to cite evidence. Did you look at the complaint? Your honor I'd have to look at the complaint again I haven't looked at it preparing for this hearing I didn't think it was relevant but I can look at it and follow up with some with some citations but I believe we did plead in the complaint about the sacred character of the land and the irreparable harm that the project is causing to the sacred character of the land and the tribes ability to practice its religion there. Counsel you're not challenging the existence of the waiver authority under IRERA section 102 are you? Not directly but to the extent that section 8005 authority to the extent the government didn't have funding authority to fund the project then it also didn't have authority to waive existing laws for the project. But you're not challenging the authority itself to in essence suspend the various statutes including the environmental statutes that you're seeking to claim injury under? No we haven't in our papers we haven't found. Okay so I am looking at the complaint now and we do talk about in our in our violation of the Fifth Amendment cause of action we talked about the harm from in the liberty interest to the tribes ability to raise its children in the tradition in the religion and that this this harm this will be harmed by the project construction interfering with cultural sites and so on. I think that's part of the broader harm of course you know what irreparable harm wasn't a cause of action irreparable harm is an injunction factor. I want to respond to a few of the points that Ms. Murphy made. One statement she said is no burial sites were found in the project area and I just want to emphasize again that that statement is nowhere in the government's evidence and I want to highlight something in particular on page 153 of the record at the top of the page Border Patrol's Paul Enriquez says there has been no instance where the discovery of a significant cultural site or burial ground has required that construction be stopped to preserve or protect such sites and this is one of the few statements about whether there was a finding or not and here of course he qualifies it by significant but again significant to whom I think in the tribe's perspective the discovery of any ancestral remain is significant and harm to it is irreparable to the tribe so again there's nowhere in the record where the government is flat out says no burial sites or other cultural resources were found during construction. Ms. Murphy cites a case where well I thought the survey said no known sites isn't that saying the same thing? I mean are we just arguing over grammar? I think it's more than arguing over grammar because known sites in my mind means recorded sites and a field survey's purpose is not to find recorded sites recorded sites are in the archaeological records database the point of the survey is to find unrecorded sites and the tribe sites in its declaration that those are what what is concerned about here is the unrecorded sites the tribe has knowledge exists based on its oral tradition and in records from other archaeological sites. You know you have to excuse me but but your argument you know sort of reminds me of remember Don Rumsfeld's sometimes you know what you don't know but sometimes you don't know what you don't know what you're talking about is you know you know what you don't know right and in other words that the district court should have given a greater account of unknown sites on what basis because you might dig up an What do you mean by likely? What supports you know what degree of likelihood? Whatever supports that you know it's likely. As I said five of the tribes declarants attested to the likelihood based on their personal knowledge of the tribe's history and the archaeologist Richard Carrico looked at nearby sites that have been surveyed acknowledging that there haven't been comprehensive surveys in the project area and findings of burials in those sites suggest there will be findings of burials in this site. That's what I mean by likely and the district court again didn't say based on the tribes evidence alone there's no likelihood. It looks specifically at the survey which is what I'm taking issue with. The other point I wanted to make is that Miss Murphy said in cases where the district remains they rerouted a road and they changed the position of a well. I'm not so sure they would do that in the case of the wall and they haven't right in the record there's a there's an account where the tribe found what it identified as a bone and what a Mexican archaeologist identified as the bone 50 feet from the wall. The tribe thinks in that case there should have been some more survey work done and maybe the project rerouted but it wasn't. The other thing I want to say about mitigation is is the monitors on the project that was that was that the bone that nobody could find when they went back to look for it? No that was the other one. The bone that nobody could find quote-unquote is the bone that our declarant Tom Holm discovered on the US side of the border and he says he found a bone on one account PVC pipe on another account the bone he reburied and the government came back and saw the PVC pipe and said that's PVC pipe. So they couldn't they couldn't find the bone? Not in that in that in that case. In the other case there was a finding of a bone 50 feet from the wall. On the Mexican side? On the Mexican side which 50 feet from the wall that's this was Cogstone's report the government's expert report 50 feet from the wall so I don't think that you know which nation it was founded says anything about whether there are more remains under the project area. The government brought that up to say their people couldn't go out in that state. The other the other point I wanted to make was about tribal monitors and that that doesn't give the tribe much comfort either because it's we're talking about an 18 mile stretch of project here in the San Diego project and there are four monitors there across 18 miles zero monitors in the El Centro project not nothing so you know the fact that the chance that a monitor will discover something and trigger the protocol to stop the project I think is almost impossible here in all cases. I thought the district court said that you were offered the opportunity to supply your own tribal monitors but the tribe declined if you wanted more monitors. I don't think that's the case the government may have alleged that in their declarations but that's not the case and besides that's beside the point because it's not about I thought it was I thought it was an expense issue because these these folks are not cheap we're paying them $75 an hour for their services. Well let's remember this is a three billion dollar project the government also said they couldn't that that cadaver dogs would be cost prohibitive that's something that you know is a little bit uncomfortable for the tribe considering the expense of the project so you know the government has an obligation particularly where well the tribe's position is the government has to pay for everything right that that's that's what we're talking about. I'm not going to respond to that point your honor I don't think that's what the tribe saying here I think the tribe saying that the government has unlawfully funded their project the tribe has pointed out that there are burials within the in the project footprint and that's harmful to the tribe and that's enough for an injunction the other the last point I want to make here is that the district courts findings on the other factors on public interest and lack of success which we think were clear legal errors clouded its analysis on the irreparable harm issue and that that deserves remand because at the very least it's the minimum we're asking for and I'll cite particular language from the district court this is on page four of the record where the court says driving these courts determination today to deny an injunction is the fundamental legal principle that obligates lower courts to follow the orders of higher courts on a similar case with similar issues so it's referring to its likelihood of success analysis but that's and that's what it's saying drove its determination about the injunction since since its analysis was a legal error there then I think its conclusion needs to be undone it needs to be remanded back for reconsideration all right does anybody have any other questions I do know thank you both thank you I'm very much appreciate the oral argument presentation that were made today and to help us with this challenging case the case of LaPosta band of the guano mission Indians of the LaPosta reservation versus Donald J Trump is submitted again thank you very much we
judges: Tashima, Tallman, Murguia